RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ECONOMY LINEN AND TOWEL SERVICE, INC.,

*Plaintiff-Appellant*,

*v.*

No. 18-3369

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS LOCAL UNION 637,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cv-00952—Michael H. Watson, District Judge.

Decided and Filed:  March 1, 2019

Before:  BATCHELDER, SUTTON, and DONALD, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:**  Timothy G. Pepper, TAFT, STETTINIUS & HOLLISTER, LLP, Dayton, Ohio, for Appellant.  John R. Doll, DOLL, JANSEN & FORD, Dayton, Ohio, for Appellee.

SUTTON, J., delivered the opinion of the court in which BATCHELDER and DONALD, JJ., joined.  BATCHELDER, J. (pg. 6), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.  Economy Linen and Towel Service rents linens and apparel to healthcare facilities near Zanesville, Ohio.  In October 2015, the company faced a shortfall of qualified truck drivers and subcontracted with another firm to provide the necessary drivers.  That did not sit well with Teamsters Local Union 637.  The union filed a grievance on the ground that the new drivers earned a higher hourly rate than the union-represented employees.  An arbitrator ruled for the union.  The district court affirmed the arbitration award.  We affirm.

Federal courts review arbitration decisions with a deferential gaze.  We ensure that the arbitrator (1) did not commit fraud or other dishonesty, (2) resolved a dispute fairly committed to arbitration, and (3) at least arguably construed the collective bargaining agreement.  *Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc).  Just as important is what we do not do.  We do not ask whether the arbitrator interpreted the contract correctly.  We thus may not overturn an arbitration decision on the ground that the arbitrator made mistakes, whether "serious" errors, *id.* at 756, or "improvident, even silly," mistakes, *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38–39 (1987).  That is a lenient standard.

How lenient?  Imagine two arbitrators who are not error prone but who place different emphases on interpreting contracts, one who places more emphasis on the words of the contract, the other who places more emphasis on the purpose of the contract.  From time to time, those different approaches will lead to different answers to the same question of interpretation.  Our standard of review permits both answers.  Now imagine two arbitrators with the same differences in emphasis but who also happen to be error prone.  Our standard permits those answers as well—and everything in between.  That is a wide range of possibilities, which is why we have described a reversible form of interpretation as the rare exception, not the rule.  *Mich. Family*, 475 F.3d at 753.  Because the parties bargained for an arbitrator's interpretation of the contract, not a federal judge's interpretation of it, that is generally what they will get.

This arbitrator's decision passes that modest test. Not one of the three disqualifying factors applies.

Neither side, for one, alleges fraud of any kind.

The arbitrator, for another, did not decide any issue outside of his authority. Article 14.05 of the arbitration agreement empowers the arbitrator to decide "[a]ll grievances and disputes between the parties as to the interpretation or application of" the contract. R. 4-1 at 13. This was a "dispute" about the "interpretation" of the contract, nothing more, nothing less.

Resolution of the appeal comes down to the third question: Did the arbitrator arguably interpret the contract? The arbitrator's award bears "the hallmarks of interpretation." *Mich. Family*, 475 F.3d at 754. He cites the relevant contract provisions, analyzes each of them, sets out the parties' competing arguments, and ultimately adopts one interpretation at the end of his 15-page opinion.

Both sides to the dispute offered legitimate, if ultimately irreconcilable, readings of the collective bargaining agreement. As the union saw it, the contract required Economy Linen to pay full-time employees as much as temporary employees. In support of its argument, the union relied on Article 6.08 of the collective bargaining agreement, which prohibits a "temporary or part-time employee" from being "hired at or given a higher raise than a full-time employee." R. 4-1 at 6. And the union offered evidence that the temporary drivers earned more than Economy Linen's full-time employees.

As the company saw it, the contract allowed management to subcontract without any restrictions. In support of its argument, Economy Linen stressed parts of Articles 3.01–.04, which treated the company as "the exclusive judge of . . . subcontracting of all or any part of the work activity." *Id.* at 3–4.

The dispute distilled to these questions: Which part of the contract controlled? And how did Economy Linen treat the subcontracted drivers? Like its own employees or like the employees of another company?

In siding with the union, the arbitrator grounded his opinion in the words of the collective bargaining agreement. He noted that Article 6.11 refers to "Temporary ('on-call') employees" as those who "are on call to work when regular full-time employees are not available." *Id.* at 6. To him, this language described the subcontracted drivers hand in glove. He concluded that Article 6.08's "unambiguous" language meant the wage-limits provision applied even when the company subcontracted drivers. R. 16-5 at 11. And he examined the subcontracting agreement itself, and found that Economy Linen exercised complete control over the subcontracted drivers. This assessment was more than adequate, indeed quite reasonable all else considered.

In challenging this conclusion, Economy Linen misses each attempted mark. The company claims that the arbitrator exceeded his authority when he concluded that the company's exclusive power to subcontract in Articles 3.01–.04 was limited by Article 6.08. But that begs the question: Which provision controlled? It's simply another way of complaining that the arbitrator misinterpreted the contract, just the kind of "interpretive error" beyond our reach in this setting. *Mich. Family*, 475 F.3d at 756. The same can be said about its argument that other language in the contract supported its interpretation.

The company claims that the arbitrator erred in examining its subcontracting agreement to determine whether it exercised "total control" over the subcontracted drivers, as one would over "a temporary employee." R. 16-5 at 12. This was a mistake, the company says, because it meant that the arbitrator incorrectly "determine[d] that Economy Linen was a joint employer." Appellant's Br. 22–23. But we see no problem with looking to how the company *itself* implemented its duties in determining whether the drivers constituted temporary employees under the contract.

Last of all, the company claims that the arbitrator erred by awarding retroactive damages. But arbitrators have long had considerable "flexibility" when "formulating remedies." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). That's because "[t]he draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency." *Id.* Just so here. *See also Misco*, 484 U.S. at 38 ("[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect."). As for the

company's concern that a forward-looking award would modify the contract no less than the backward-looking damages award given by the arbitrator, that is not true. The arbitrator's decision left the parties with discretion to sort out what should happen going forward—after Economy Linen had ceased paying part-time employees more than full-time employees—while dealing with what had already happened in the only way that seemed feasible: damages.

We affirm.

—————————

**CONCURRENCE**

—————————

ALICE M. BATCHELDER, Circuit Judge, concurring.  I write separately to say that I concur only because I am bound by law to do so.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("We have held that a court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator, even if [the arbitrator's decision] appears to the court to be frivolous." (quotation marks omitted)).

At best, in my view, the arbitrator's interpretation of the provisions of the CBA at issue here is not totally implausible.  That it is clearly wrong is not enough.